UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSEPH PEPE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CARE WELLNESS LLC,<br><br>Defendant. | Civil Action No. 1:25-cv-01425 (RDA/IDD) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiffs' Motion for Default Judgment against Defendant CARE Wellness, LLC ("CARE Wellness") pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 13. After no licensed attorney for the Defendant appeared at the hearing on December 5, 2025, the undersigned Magistrate Judge took this matter under advisement. Upon consideration of the Complaint, Plaintiffs' Motion for Default Judgment Against the Defendant ("Motion"), and the supporting documentation thereto, the undersigned Magistrate Judge makes the following findings and recommends that the Motion be **GRANTED**.

## I. INTRODUCTION

On August 28, 2025, Plaintiffs filed their Complaint alleging that Defendant breached their obligations under a Membership Interest Purchase Agreement (the "Purchase Agreement") [Dkt. No. 1-2] executed by the parties and unsecured promissory notes executed and issued by the Defendant to each Plaintiff (the "Promissory Notes") [Dkt. Nos. 1-3, 1-4] (collectively the "Transaction Documents"). Dkt. No. 1. The Complaint asserts two counts: one count for breach of

contract and one count for unjust enrichment/quantum meruit, in the alternative to count 1. Compl. ¶¶ 52–82. In its Complaint, Plaintiffs seek (i) judgment in Plaintiffs' favor, (ii) compensatory damages; (iii) contractual interest; (iv) pre- and post- judgment interest; (v) reasonable attorneys' fees and costs; (vi) punitive and exemplary damages; (vii) a mandatory injunction compelling Defendant to release Plaintiffs from their guarantees in Cryo Management, LLC; and (viii) any other relief that the Court may deem just and proper. Compl. at 16.

### A. Jurisdiction and Venue

For a court to render a default judgment against a party, it must have (1) subject matter jurisdiction, (2) personal jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. Compl. ¶¶ 4–7.

This Court has personal jurisdiction over Defendant CARE Wellness LLC based on two reasons. First, this Court has personal jurisdiction over the Defendant because CARE Wellness is a limited liability company with its principal place of business located in Virginia. Compl. ¶ 6. A forum can exercise general jurisdiction over a defendant who is domiciled in the forum; corporate defendants are deemed domiciled in a state in which the corporation is either incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Second, this Court has personal jurisdiction over the Defendant pursuant to Virginia's long-arm statute. *See* Compl. ¶ 8. Specifically, personal jurisdiction may be exercised over a corporation on numerous bases, including if the corporation is "transacting any business" in Virginia or if the corporation has "an interest in, using, or possessing real property" in the state. *See* Va. Code §§ 8.01-328.1(A)(1), (6). CARE Wellness has an interest in, uses or possesses real property in Virginia

and transacts business in the state. Compl. ¶ 8. Therefore, this Court has personal jurisdiction over CARE Wellness.

Because the Defendant is subject to personal jurisdiction here, the Defendant is "deemed to reside" in this judicial district. Compl. ¶ 9; *see also* 28 U.S.C. § 1391(c)(2). Thus, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1). Additionally, venue is proper because according to Section 15 of the Purchase Agreement and Section 14(g) of the Promissory Notes, the parties consented to venue in this District. Compl. ¶ 9.

**B. Service of Process**

The Court must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure 4(h)(1)(B) allows a party to serve a corporation, partnership, or association inside the U.S. "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). On September 2, 2025, the Complaint and a Summons in Civil Action was issued by the Clerk of the Court to CARE Wellness, which was accepted by Lindsey Herrera of U.S. Corporations Agents, Inc., the designated agent to accept service of process on behalf of CARE Wellness. Mem. in Supp. of Mot. for Default J. at 9 [Dkt. No. 14]; *see also* Dkt. No. 10-1. Therefore, the Plaintiffs properly served the Defendant.

**C. Grounds for Default**

Plaintiffs filed their Complaint on August 28, 2025. Dkt. No. 1. The Defendant has failed to appear, answer, or file any other responsive pleadings in this matter. On September 30, 2025, Plaintiffs filed a Request for Entry of Default with the Clerk of Court. Dkt. No. 10. The Clerk entered Default against the Defendant on October 1, 2025. Dkt. No. 11. On October 23, 2025, Plaintiffs filed their Motion for Default Judgment Against the Defendant, and the Court held a

hearing on the matter on December 5, 2025. Dkt. Nos. 13, 19. After no licensed attorney for Defendant appeared at the hearing on the Motion, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. FACTUAL FINDINGS

Upon full review of the pleadings, the undersigned Magistrate Judge finds that the Plaintiffs have established the following facts. Plaintiff Joseph Pepe is a resident of Connecticut and Plaintiff Matthew Pepe is a resident of North Carolina. Compl. ¶¶ 4–5. Defendant CARE Wellness is a limited liability company with its principal place of business located at 20412 Middlebury Street, Ashburn, Virginia 20147. Compl. ¶ 6. On September 6, 2024, the parties entered into the Membership Interest Purchase Agreement ("Purchase Agreement") in which the Plaintiffs agreed to sell 90% of the issued and outstanding membership interests of Cryo Management, LLC to the Defendant. Compl. ¶ 11. Along with this interest, the Plaintiffs agreed to give the Defendant rights to operate multiple Cryo business operations in North Carolina. *Id.* The total purchase price was $810,000. *Id.* Additionally, as a part of the Purchase Agreement, and in exchange for Plaintiffs' sale of their membership interest in Cryo, the Defendant agreed to use its best efforts to release the Plaintiffs from their obligations as Guarantors of Cryo by October 6, 2024. Compl. ¶ 13. To date, the Plaintiffs are still Guarantors of Cryo and have obligations to Cryo, Cryo One, and Cryo Two arising out of five separate contractual agreements referred to as the Cryo Guaranties. Compl. ¶ 12.

On September 6, 2024, pursuant to the Purchase Agreement, the Defendant executed and issued two unsecured Promissory Notes, one to each Plaintiff, in the aggregated amount of $600,000. Compl. ¶¶ 14–15, 17, 19. Defendant promised to pay the Plaintiffs the principal amount of the Promissory Notes and any accrued amounts thereto. Compl. ¶ 16. Plaintiff Joseph Pepe's

Promissory Note ("Joseph's Note") is in the principal sum of $500,000, and the Defendant is obligated to repay Joseph in sixty (60) equal monthly cash installments of Eight Thousand Three Hundred Thirty-Three and 33/100 Dollars ($8,333.33), starting on September 30, 2024. Compl. ¶¶ 17–18. Plaintiff Matthew Pepe's Promissory Note ("Matthew's Note") is in the principal sum of $100,000, and the Defendant is obligated to repay Matthew in sixty (60) equal monthly cash installments of One Thousand Six Hundred Sixty-Six and 67/100 Dollars ($1,666.67), starting on September 30, 2024. Compl. ¶¶ 19–20.

The unpaid principal balance of the Promissory Notes "accrues simple interest at a rate of six percent (6%) per annum commencing on September 6, 2024 and computed on the basis of a 365/366-day year for the actual number of days elapsed (the "Interest Rate")." Compl. ¶ 23. Interest continues to accrue and is owed to the Plaintiffs in cash on each monthly payment date or upon acceleration of the debt until the total principal amount of each Promissory Note is paid in full. *Id.* Any missed payment on the principal or interest due to the Plaintiffs by the Defendant is considered an event of default and shall accrue contractual interest and will be added to the total amount due to the Plaintiffs on the next scheduled payment date. Compl. ¶¶ 21, 24. Failure of the Defendant to perform any of its obligations under any of the Transaction Documents also constitutes an event of default. Compl. ¶ 26.

In the event of default, Plaintiffs' have the discretion to increase the Interest Rate on any unpaid principal balance by "four percent (4%) per annum, to a total interest rate of ten percent (10%) per annum (the "Default Interest Rate")" during the period of Defendant's default. Compl. ¶ 24. Plaintiffs may provide written notice to the Defendant of the occurrence and continuation of any event of default and may require that all unpaid balances and accrued and unpaid interest is due immediately. Compl. ¶ 27. Upon receipt of such notice, the Defendant is required to provide

immediate payment to the Plaintiffs. *Id.* Lastly, the Defendant is obligated to reimburse the Plaintiffs on their demand "for any and all costs and expenses including, but not limited to, the reasonable fees and disbursements of legal counsel incurred in the collection of debt or enforcement of any of the Transaction Documents." Compl. ¶ 29.

CARE Wellness defaulted on the Purchase Agreement by failing to "use commercially reasonable best efforts to release Plaintiffs from the Cryo Guaranties by October 6, 2024, or anytime after," and make payments on the principal and interest due to the Plaintiffs on November 1, 2024, or anytime thereafter. Compl. ¶¶ 31–32. Each of these failures independently constitutes an event of default under the Promissory Notes, which implicated the Default Interest Rate for the defaulting period and gave Plaintiffs grounds to demand acceleration of the total debt and amounts accrued thereunder. Compl. ¶ 33. Plaintiffs provided Defendant written notice detailing the occurrence and continuance of the defaulting events, and declared that the total unpaid balance and all accrued and unpaid interest was due and payable no later than June 20, 2025. Compl. ¶ 34. On that same date, Plaintiffs' counsel reached out to Defendant's counsel regarding Defendant's default and the multiple notices that were previously sent. Compl. ¶ 35. Defendant's counsel received a June 2025 Demand Notice which provided details as to the start of the defaulting events, a description of what the defaulting events were, explained the Plaintiffs' rights in the event of default, restated their demand for immediate accelerated payment, explained the implication of the Default Interest Rate, confirmed that the Defendant had not cured the events of default despite receiving and acknowledging prior notices of these issues, and notified the Defendant that through receipt of a demand and an invoice, the Defendant is obligated to reimburse the Plaintiffs for costs and expenses of legal counsel incurred in the collection and enforcement of any of the Transaction Documents. Compl. ¶¶ 36–43.

The Defendant has not disputed any debts owed to the Plaintiffs under the Promissory Notes. Compl. ¶ 45. Defendant's President, Christopher Cragel, acknowledged that Defendant's default began on November 1, 2024, and that the Defendant owes Plaintiffs unpaid principal and interest amounts according to the Promissory Notes. Compl. ¶ 46. As of the date of Plaintiffs' filing of the Complaint, the Defendant has not cured its default. Compl. ¶ 47. As of August 25, 2025, "Defendant owes Plaintiffs $569,177.19 of aggregate unpaid principal, $25,004.97 in aggregate accrued unpaid interest as of August 27, 2025, and $37,078.00 in attorneys' fees, costs and expenses," with interest accruing at the Default Interest Rate. Compl. ¶ 48.

## III. EVALUATION OF PLAINTIFFS' COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a valid claim). A defendant in default concedes the factual allegations of the complaint and is barred from contesting them on appeal. *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (explaining that default has the effect of finding all factual allegations in the complaint admitted). Default does not, however, constitute an admission of the adversary's conclusions of law, and it is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead,

the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate the Plaintiffs' claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

**A. Liability: Count I– Breach of Contract**

Plaintiffs seek to recover on a breach of contract claim under the Complaint. The Complaint asserts one claim for breach of contract due to the Defendant's default under the Transaction Documents. Compl. ¶¶ 52–62. For the reasons set forth below, the undersigned finds that the Plaintiffs have established a valid breach of contract claim.[1]

According to Section 15 of the Purchase Agreement and Sections 14(e) of the Promissory Notes, the parties have agreed that the Transaction Documents are governed by Delaware law. Compl. ¶ 10. Under Delaware law, a party claiming breach of contract must establish three

[1] In their Complaint, Plaintiffs assert Count II – unjust enrichment/quantum meruit "in the alternative to count one." Compl. ¶¶ 63–82. The undersigned finds that there is a valid and enforceable contract between the parties, therefore, the Court does not deem it necessary to assess Count II because unjust enrichment is an equitable remedy that can be sought when no valid contact exists. The recommendation set forth below grants the Motion for Default Judgment only as to Count I.

elements to prevail: (1) that there is a legally enforceable contract, (2) a breach of one or more of the obligations under that contract, and (3) injury or damage to the plaintiff flowing from that breach. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

"A legally enforceable obligation, or contract, requires that there be 'acceptance of an offer . . . as well as valuable consideration.'" *Id.* at 761 (quoting *Montagna v. Holiday Inns, Inc.* 269 S.E.2d 838 (Va. 1980)). First, the Plaintiffs have alleged that there is a legally enforceable contract between the parties through the Transaction Documents. Compl. ¶ 53. Plaintiffs satisfied and fulfilled their contractual obligations to the Defendant, pursuant to the Transaction Documents, by agreeing to sell their 90% of the issued and outstanding membership interests of Cryo and their rights to operate multiple Cryo business operations in North Carolina to the Defendant, in exchange for a purchase price of $810,000. Compl. ¶¶ 11, 54. All parties agreed to this contract, as documented by both Plaintiffs' signatures and the signature of Defendant's President, Christopher Cragel, the "authorized signatory" for the Defendant, on the Purchase Agreement and the Promissory Notes. *See* Dkt. Nos. 1-2, 1-3, 1-4. The Defendant was obligated to repay Plaintiffs per the terms of the Transaction Documents. Compl. ¶¶ 14–20; Dkt. Nos. 1-2, 1-3, 1-4. Plaintiffs allege that despite the fulfillment of their obligations under the contract, the Defendant breached the agreement by failing to fulfill their obligations under the agreement. Mem. in Supp. of Mot. for Default J. at 16–17. Therefore, the parties' Transaction Documents give rise to a legally enforceable obligation, and the first element of the breach of contract claim is satisfied.

Plaintiffs also satisfy the second element. Specifically, Plaintiffs allege and the Defendant admits by not answering the Complaint, that the Defendant defaulted under the Transaction Documents by failing to "use commercially reasonable best efforts to release Plaintiffs from the Cryo Guaranties by October 6, 2024, or anytime after," and make payments on the principal and

interest to the Plaintiffs on November 1, 2024, or anytime thereafter. Compl. ¶¶ 31–32. Plaintiffs also provided numerous written notices to the Defendant about its default, which were acknowledged by the Defendant's President, Christopher Cragel. Compl. ¶¶ 36-43. However, the events giving rise to the default were not cured. Compl. ¶ 48. Thus, the Defendant breached the contract.

Finally, Plaintiffs allege that the Defendant's failure to pay caused Plaintiffs to suffer damages. As of October 23, 2025, the date on which the Plaintiffs filed this Motion, Plaintiffs suffered damages of approximately $683,594.18. Mem. in Supp. of Mot. for Default J. at 24. Specifically, $569,177.19 of aggregate unpaid principal, $33,893.49 in aggregate accrued unpaid interest as of October 23, 2025, and $80,523.50 in attorneys' fees, costs and expenses as of October 17, 2025 is owed to the Plaintiffs. Mem. in Supp. of Mot. for Default J. at 24–25. Plaintiffs' attorney costs and fees and the interest calculated pursuant to the Transaction Documents continue to accrue through the date of this report and recommendation. Mem. in Supp. of Mot. for Default J. at 27. Therefore, the undersigned finds that the Transaction Documents are valid and enforceable contracts and that the Plaintiffs have established that they were injured because of Defendant's breach of the Transaction Documents.

## IV. RELIEF REQUESTED

### A. Damages

In a default case, the plaintiff's factual allegations are accepted as true for all purposes except in determining damages. To support a claim for damages, a plaintiff must provide an appropriate basis for the Court to determine whether it is entitled to the relief sought. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiffs seek $683,594.18 in damages, which includes the principal and

accrued unpaid interest under the Promissory Notes, including attorney's fees and costs. *See* Mem. in Supp. of Mot. for Default J. at 22–27. Because Plaintiffs have sufficiently pled relief for Defendant's breach of contract, upon review of Plaintiffs' Complaint, Motion for Default Judgment, and Memorandum in Support, this Court finds that Plaintiff has provided an adequate basis for the award of actual damages in the amount $683,594.18.

**B. Injunction**

A court has equitable discretion to order a permanent injunction when (1) a party has suffered an irreparable injury, (2) remedies available at law are inadequate to compensate for that injury, (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). The Court finds that the Plaintiffs have met all four factors to be granted a permanent injunction to compel the Defendant to release Plaintiffs from the Gryo Guaranties.

First, the Plaintiffs have suffered an irreparable harm because they financially and legally remain responsible for all obligations arising under the Cryo Guaranties. Mem. in Supp. of Mot. for Default J. at 21. By still remaining as Guarantors, the Plaintiffs can be forced to pay "significant monetary payments, defend against third-party litigation, or exert time, resources, costs or expenses to continue performing as Guarantors." *Id.* As to the second element, there are no remedies available at law that are equitable because monetary relief would not prevent Plaintiffs from being held legally and financially responsible as Guarantors under the Promissory Notes in the future if the Defendant does not release the Plaintiffs as Guarantors. Third, an equitable remedy is warranted because, pursuant to the parties valid contract, the Defendant promised to release the Plaintiffs from the Cryo Guaranties in exchange for the Plaintiffs selling their interest in Cryo to

the Defendant. *Id.* Holding the Defendant to its bargained for exchange is required because it is the only remedy that can provide the Plaintiffs the relief they are requesting, which is a right that they are owed under the contract. Lastly, public interest would not be disserved by a permanent injunction in this case because the impact of an injunction here is narrowly tailored to the expressed and agreed upon language in the Transaction Documents. Mem. in Supp. of Mot. for Default. J. at 23. Given that the Defendant was made aware that the Plaintiffs had a right to seek all relief necessary to enforce the Transaction Documents, public policy also supports the enforcement of the parties' valid contract. Accordingly, having found that all four elements are met, the Court finds that the Plaintiffs have established their right to a mandatory injunction compelling Defendant to release Plaintiffs from the Cryo Guaranties.

**C. Pre- and Post-Judgment Interest**

Plaintiffs further seek pre- and post-judgment interest in addition to interest pursuant to the Transaction Documents. Compl. at 16; Mem. in Supp. of Mot. for Default. J. at 22–28. Given that the Transaction Documents are governed by Delaware law, Delaware law governs the award of pre-judgment interest in this diversity case. *See Helena Agri-Enters., LLC v. VA7, LLC*, 2022 WL 2287417, at *3 (W.D. Va. June 23, 2022) ("State law governs the award of prejudgment judgment interest in a diversity case."). Under Delaware law, "prejudgment interest is awarded as a matter of right," and interest generally begins to accrue the day when payment was due. *Delta Eta Corp. v. Univ. of Delaware*, 2 A.3d 73 (Del. 2010); *see also Moskowitz v. Mayor and Council of Wilm.*, 391 A.2d 209, 210 (Del. 1978). "[A] court of equity has broad discretion, subject to principles of fairness, in fixing the rate to be applied."19 Summa Corp. v. Trans World Airlines, Inc., 540 A.2d 403, 409 (Del. 1988). One of the purposes of prejudgment interest is to "compensate[] the plaintiff for the loss of the use of his or her money." *Brandywine Smyrna, Inc. v. Millennium Builders,*

*LLC*, 34 A.3d 482, 486 (Del. 2011). Section 2301 of title 6 of the Delaware Code provides that "[a]ny lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon." 6 Del. C. § 2301(a). If the interest rate set forth in a note or bond does not violate this provision or federal law, the interest rate agreed to by the parties shall be enforceable. 6 Del. C. § 2301(b). However, the rate of interest on a loan shall not be limited by this Delaware provision if "the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of any borrower." 6 Del. C. § 2301(c). Further, Delaware courts uphold the freedom to contract and will enforce any contract that is voluntarily agreed to unless the contract offends public policy or harms the public. *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674, 688–89 (Del. 2024).

Here, the Court found that the Transaction Documents constitute a valid enforceable contract between the Plaintiffs and the Defendant, thus, this Court will rely on the words contained in and agreed to by the parties in the Transaction Documents to determine the rights and obligations regarding interest. In that regard, the Promissory Notes provide that the initial interest rate is 6%, and that the Plaintiffs can increase the interest to the Default Rate of 10% in the event of Defendant's Default. Compl. ¶¶ 23–24. The Plaintiffs elected to enforce the Default Rate and provided the Defendant notice to this effect. Compl. ¶¶ 27, 29. Additionally, the Promissory Notes provide that "interest shall be computed on the basis of a 365/366-day year for the actual number of days elapsed and shall commence to accrue on the date hereof and shall continue to accrue until the principal hereof is paid in full, in cash (whether before or after maturity or judgment)." Dkt. Nos. 1-3 at 2, 1-4 at 2. Based on the explicit language in the Promissory Notes, the parties agreed that interest shall accrue until the principal is fully paid, including consideration of a judgment.

Accordingly, the Court finds that the interest owed on the principal shall be set at the 10% Default Rate through the Defendant's payment of the judgment, as already agreed to under the contract.

The Court finds that the Plaintiffs are not owed any other pre-judgment or post-judgment interest because no additional forms of interest were included as a term in the Transaction Documents. The Plaintiffs have not provided any legal authority to support the idea that the Court should consider information not contained within the contract to award the Plaintiffs additional interest. While the Plaintiffs rely on 6 Del. C. § 2301 for their argument that they are owed pre-judgment interest, subsection (c) of this provision applies because the amount that was loaned under the contract in aggregate exceeds $100,000 and the parties' interests are unsecured. *See* 6 Del. C. § 2301(c). Thus, the interest rate included in the Promissory Notes governs the pre-judgment interest. Lastly, while federal law does typically govern post-judgment interest, the parties' Transaction Documents already address the interest that would accrue post-judgment because the Promissory Notes state that interest continues to accrue until the full amount is paid to the Plaintiffs. Thus, the Transaction Documents already provide for the payment of post-judgment interest by requiring that Defendant pay interest on the owed amount until the owed amount is paid in full, which includes time after the judgment.

**C. Attorney's Fees**

Finally, Plaintiffs request attorney's fees, costs, and expenses in the amount of $80,523.50. Mem. in Supp. of Mot. for Default J. at 8. The Promissory Notes expressly state the following:

> The [Defendant] shall pay or reimburse the [Plaintiffs], on demand, for any and all costs and expenses, including, but not limited to, the reasonable fees and disbursements of legal counsel, incurred in (a) any amendments, consents, waivers or other modifications to this Note or the other Transaction Documents related to this Note and (b) the administration, preservation, defense, protection, collection or other enforcement (including with respect to any workout, restructuring or bankruptcy proceeding) of this Note or any other Transaction Document, or in attempting to do any of the foregoing.

Dkt. Nos. 1-3 at 7, 1-4 at 7. Plaintiffs' attorneys' fees, as of October 17, 2025, totaled $79,774.50, based upon 130.7 hours of work performed by attorneys at Finn Dixon & Herling LLP ("FDH") and Hirschler Fleischer, P.C. ("Hirschler Fleischer"). Mem. in Supp. of Mot. for Default J. at 25–27; Dkt. No. 14-1, Exh. A, Decl. of Tony Miodonka, Esq. ("Miodonka Declaration"); Dkt. No. 14-2, Exh. B, Decl. of Andrew K. Clark, Esq. ("Clark Declaration"). FDH attorneys billed 102.6 hours for legal services in connection with the representation of Plaintiffs in this action, for a total of $66,438.00. Miodonka Declaration at 1-2. Such services included completing court filings, conducting legal research and drafting, time spent communicating with the Plaintiffs, reviewing and calculating damages under the Promissory Notes and drafting the Notice of Default, Payment Demand and Reservation of Rights dated June 20, 2025, and analysis of the facts and claims. *Id.* at 2-3. The hourly rates for all of the FDH attorneys and paralegals who worked on behalf of the Plaintiffs for this matter are as follows: partner Tony Miodonka $800; partner Peter J. Buscemi $865; partner Robert A. Barbieri $755; counsel Benjamin F. Smyser $725; associate Kevin V. Sweeney $600; senior paralegal Catherine A. Sommer $390; and corporate paralegal Simone Kochav $260. *Id.* at 2.

Hirschler Fleischer attorneys billed 28.10 hours for $13,336.50 for their representation of the Plaintiffs between August 2025 through October 17, 2025. Clark Declaration at 3. The services provided by Hirschler Fleischer consisted of conducting legal research, drafting filings, and work related to service on the Defendant. *Id.* at 4. The hourly billing rates for Hirschler Fleischer attorneys and paraprofessionals are as follows: partner Andrew K. Clark $485; associate Eliza J. Unrein $325; and paralegal Virginia H. Cary $275. *Id.* at 3. In addition to attorney's fees, Plaintiff also incurred $749.00 in costs and expenses. Mem. in Supp. of Mot. for Default J. at 26; Clark Declaration at 3. These costs include filing fees and private process service. *Id.* Accordingly, the

total attorney's fees and expenses incurred by the Plaintiffs amount to $80,523.50. Mem. in Supp. of Mot. for Default J. at 8. The undersigned finds the requested costs and attorneys' fees in the amount of $80,523.50 to be reasonable.

## V. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiffs Joseph and Matthew Pepe and against Defendant CARE Wellness LLC as to Count I of the Complaint. The undersigned recommends that an Order be entered awarding Plaintiffs a mandatory injunction compelling Defendant to release Plaintiffs from the Cryo Guaranties, and monetary damages against the Defendant in the amount of $603,070.68, plus attorney's fees and costs in the amount of $80,523.50, for a total judgment amount of $683,594.18, with interest accruing until the judgment is paid.

## VI. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/
Ivan D. Davis
United States Magistrate Judge

July 31, 2026
Alexandria, Virginia